UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YANIV NEIL SIDES,

            Plaintiff,

v.                                                                                  03-CV-153

NYS DIVISION OF STATE POLICE,

            Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEFAN D. BERG, ESQ.<br>Attorney for Plaintiff<br>300 Arnold Avenue<br>Syracuse, NY 13210 | |
| ELLIOT SPITZER<br>Attorney General of<br> the State of New York<br>Attorney for Defendant<br>The Capitol<br>Albany, NY 12224 | NELSON R. SHEINGOLD<br>Assistant Attorney General |

HOWARD G. MUNSON, SR. J.

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to Title VII, 42 U.S.C. § 2000e-et seq., 42 U.S.C. § 1981, and New York Executive Law § 296.  Plaintiff later withdrew claims under the New York Executive Law.  Plaintiff seeks declaratory, injunctive and equitable relief, liquidated and compensatory damages, costs and attorney's fees.

As a preliminary matter, the Court must dismiss Plaintiff's action based on 42 U.S.C. §1981.  By alleging discrimination based on religion and not on race, he has failed to state a cause of action under § 1981. St. Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022

(1987); Catholic War Veterans, Inc. v. New York, 576 F.Supp. 71, 74 (S.D.N.Y.1983) (religious discrimination not covered by §1981); Khawaja v. Wyatt, 494 F.Supp. 302, 304 (W.D.N.Y.1980). See also Vuksta v. Bethlehem Steel Corp., 707 F.2d 1405 (D Cir. 1982); *cert. denied*, 464 U.S. 835, 104 S. Ct. 121, 78 Ed.2d 195 (1983).

Title VII covers discrimination based on sex, color, national origin, and religion. A Title VII plaintiff is only entitled to compensatory and punitive damages calibrated by employer size. Title VII also limits back pay awards to two years, 42 U.S.C. S 2000e-5(g)(1).

The complaint alleges that the Division of New York State Police ("NYSP") was compelled to change its applicant processing and scheduling of Troopers to accommodate his religious beliefs which would not permit his working on the Jewish Sabbath. Defendant replies that plaintiff is unable to serve as a Trooper because his religious doctrines do not permit him to work on certain dates, and any accommodation would have forced NYSP to breach the terms of existing collective bargaining agreements and seniority based systems, and would have meant incurring more than de minimis cost.

The application process to become a New York State Police Trooper ("NYSP"or "Trooper") consists of a written test and a physical stage or "processing." In February 2001, plaintiff submitted an application for employment as a Trooper. Plaintiff passed the written test and in a letter dated July 13, 2001, was advised that his position on the Trooper eligible candidate had been reached and in order to continue the process, it was necessary for him to report for further processing on August 11 and 12, 2001. The section segment consisted of a two day examination conducted at the NYSP Academy. In response to the NYSP's invitation, plaintiff wrote an undated letter stating that he would not report for processing on August 11,

2001, "[d]ue to the fact that I am a Sabbath observer, I cannot take any test on <u>Saturday</u>," (emphasis in original), and asked for another weekday date to complete his processing. (Campbell Decl. Ex. F). On August 27, 2001, Lt. Pamela answered plaintiff's letter denying his request, explaining that:

> As you know, Troopers are required to work weekends, holidays, irregular hours and overtime. In short, Troopers are required to be available for duty anytime. It appears from your letter, that even if you successfully completed the testing process and were appointed to the State Police, you could not work on the Sabbath. Because an accommodation to prevent this occurrence is neither practical or available, rescheduling the test would serve no purpose.

(<u>Id</u>. Ex. G).

Plaintiff replied to this letter on September 14, 2001, articulating that he was unable to work on, "the Sabbath and Jewish holidays (Holidays) which would not fall on regular American holidays." (<u>Id</u>. Ex .H). Plaintiff was telephoned that he could do the processing on September 29, 2001. (<u>Id.</u> ¶ 49). Plaintiff then telephoned Laurel LeClair of the NYSP and clearly informed her that he would not take part in processing on Saturday because of his Sabbath observance. (Sides Dep. p. 99). On October 5, 2001, Glenn Valle, Counsel for the NYSP, advised plaintiff in a letter that his rescheduling request had been denied due to the fact that:

> Each and every member of the New York State Police must be available to work, unconditionally, 24 hours a day, 365 days a year. This requirement includes the necessity to be available for work on Saturdays, and The Jewish High Holidays, as well as other secular and non-secular holidays. In light of your state inability to participate in the physical ability test, due to your religious observances, we assume that you are unavailable to work as a New York State Trooper on Saturdays and for religious holidays. For this reason, there is no practical purpose to reschedule this test at this time.

(Campbell Decl. Ex. 1).

For an Orthodox Jew who strictly practices his faith, the Sabbath starts at sundown

3

Friday night and ends when there are three stars in the sky on Saturday night, a period of approximately 25 hours. (Sides Dep. pp. 69, 76). During this length of time, plaintiff is unable to take part in any activity considered "work" under Jewish law. (Id. at pp. 68-69, 76-78). He also cannot engage in such activities as answering the telephone, pushing an elevator button, driving a car, or utilizing a police radio. (Id.). There are also a number of holidays throughout the year where the same work and other restrictions are applicable. (Id. pp. 78-87). In addition to the approximately 25 hour non-work period of the Sabbath, plaintiff would need additional time to leave work early enough to be at home one hour before sunset, and, after leaving the synagogue after sundown on Saturday and could not report to work until after returning to his home. (Id. p 89, 93). The only exception to plaintiff's work restriction would involve a "catastrophic" occurrence such as September 11, 2001. (Id. 95-98). During his deposition testimony plaintiff was unable to specify any other catastrophic happening in the history of New York City, where he resides, or New York State which would be of sufficient crisis to permit his working on the Sabbath. (Id. pp. 95-99, 110-111).

Currently before the court are cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) and (b). The parties have entered opposition to the respective motions.

## DISCUSSION

To obtain a summary judgment there must be "no genuine issue as to any material fact" and "the moving party [must be] entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). Genuine issues of fact are not created by conclusory allegations. Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no

reasonable trier of fact could find in favor of that party. Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L Ed.2d 538 (1986). There must be more than a "scintilla of evidence" in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L. Ed.2d 202 (1986).

In this case, motions for summary judgment were filed by both parties. When both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. Schwabenbauer v. Board of Education of Olean, 667 F.2d 305 (2d Cir.1981). When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. Id. at 313. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 314.

The New York State Police have statewide jurisdiction and is frequently the only law enforcement entity in many New York communities. They are responsible for maintaining the safety and security of the State's people, and crucial to this duty is the ability to properly staff each shift. They must be able to strategically spread their resources fully as needed to achieve its mission, and it is critical that the State Police function at acceptable force levels. If the State Police were to function understaffed, it would certainly impact public safety, as resources would be overstretched, and there would be less back up available to assist on-duty personnel to make certain that there are enough Troopers covering every shift, the 1191 - 203Collective Bargaining Agreement and the Award and Clarification ("the CBA/A&C") provides that every Trooper is

placed on a mandatory recall list. When a Troop experiences the unscheduled absence of a Trooper scheduled to work, and there are no available volunteers to take on his or her duties, off duty Troopers from the mandatory recall list are required to report in inverse order of seniority.

Plaintiff claims that Defendant's refusal to hire him as a State Trooper constitutes religious discrimination under Title VII. This statute makes it unlawful for an employer to fail or refuse to hire an individual on the basis of that individual's religious observances, practices or beliefs unless the employer demonstrates that it is unable to "reasonably accommodate" the prospective employee's religious observance or practice without "undue hardship on the conduct of the employer's business." 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1). The plaintiff bringing a religious discrimination claim under Title VII bears the initial burden of establishing a prima facie case by proving that: (1) he/she has a sincere religious belief that conflicted with an employment requirement; (2) he/she informed his/her prospective employer of his/her religious views or practices; and (3) he/she was not hired because of his/her inability to comply with the conflicting employment requirement.

In employment discrimination cases, brought under Title VII, § 42 U.S.C., the "plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L. Ed.2d 207 (1981) (Title VII claim).

Once the employee has established a prima facie case, the burden shifts to the employer to prove either that it made good faith efforts to accommodate the employee's religious practices and beliefs or that it could not reasonably do so without incurring "undue hardship." Philbrook

6

v. Ansonia Board of Education, 757 F.2d 476, 481 (2d Cir.1985), aff'd and remanded, 479 U.S. 60, 107 S.Ct. 367, 93 L. Ed.2d 305 (1986)  Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1486 (10th Cir.1989), *cert. denied sub nom.*,  Nobel-Sysco Foods Services Co. v. Toledo, 495 U.S. 948, 110 S.Ct. 2208, 109 L. Ed.2d 535 (1990);  E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir.1989).

Since the Defendant herein has acknowledged that Plaintiff has met the requirements needed to establish a prima facie case, the burden now shifts to the defendant to present evidence that reasonable accommodation would entail "undue hardship."  Ansonia, 479 U.S. at 63.

Recognizing that the phrases "reasonable accommodation" and  "undue hardship" are not defined under the statutes, "[e]ach case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably."  United States v. City of Albuquerque, 545 F.2d 110, 114 (10th Cir.1976), cert. denied,  433 U.S. 909, 97 S.Ct. 2974, 53 L Ed.2d 1092 (1977).   Once an employer demonstrates that it reasonably accommodated an employee's religious needs, the statutory inquiry ends.  Ansonia, 479 U.S. at 68, 107 S.Ct. at 371-72.  "[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship."  Id. at 68-69, 107 S.Ct. at 372.  The Supreme Court has described "undue hardship" as any act requiring an employer to bear more than a "de minimis cost" in accommodating an employee's religious beliefs.  Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 n. 15, 97 S.Ct. 2264, 2277 n. 15, 53 L. Ed.2d 113 (1977).   The Court has also recognized that the phrase "de minimis cost" entails not only monetary concerns, but also the burdens employers bear in conducting burden their businesses,

such as scheduling difficulties, loss of efficiency, disruption of other employees work routines, and general employment discontent. Id.; Brener v. Diagnostic Center Hospital, 671 F.2d 141, 146 (5th Cir. 1982); Weber v. Roadway Express, 199 F.3d 270, 274-75 (5th Cir. 2000).

The Supreme Court has held that accommodation that results in an imposition on other workers or causes the employer to bear more than de minimis costs constitutes undue hardship. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84-85, S Ct. (1977); Gordon, 791 F. Supp. at 436 (employer need not accommodate by "denying the needs, rights or preferences of other employees").

The requirement that discriminatory employment practices be justified with a showing of business necessity reflects the law's general approach to employment equality. An employment practice, whether a test or not, which adversely affects minority groups must be eliminated if it is not necessary to the conduct of the business. Griggs v. Duke Power Co., supra; Robinson v. Lorillard, supra; United States v. St. Louis-San Francisco Ry. Co., 464 F.2d 301 (8th Cir. 1972). But while courts have come to depend on science in determining test validity, no such assistance is available in passing on the necessity of other employment practices. When the "business" is protecting the lives and property of a dependent citizenry, a Court should be especially leery of reconstructing employment practices which are ostensibly designed to increase the professional competence of the Department. Vulcan Society v. Civil Service Commission, 5 FEP cases 699 (S.D.N.Y.1973). In the instant case, Plaintiff was notified that a Trooper must be unconditionally available for work 24 hours a day 365 days a year, and that this requirement included being prepared to work on Saturday Sabbaths, the Jewish High

Holidays and other secular and non-secular holidays. When Plaintiff advised Defendant that he would be unable to make this commitment, he was notified that the employment process would be discontinued because even if he received an employment appointment to the State Police, he could not meet the position's work accessibility requirements.

It is apparent from Plaintiff's statements that, even if he became a Trooper, his work schedule would not permit him to observe the Sabbath and certain Jewish Holidays. While he might be able to observe these religious occurrences by instituting a series of shift-swaps with fellow Troopers for the dates on which they fell, he would not be able to do so during his first year as a Trooper. New York State Executive Law § 215(3) provides that Troopers appointments shall be made for a period of one year.

The salaries, wages, work schedules, hours of work and other terms of employment of Troopers are set forth in both the CBA/A&C, entered between the New York State and the Police Benevolent Association of the New York State Troopers, Inc. Each of these documents prohibits probationary Troopers from voluntarily swapping shifts during their one year probationary time period. Shift-swapping is a right of seniority, and Defendant is "not required by Title VII to carve out a special exception to its seniority system in order to help [Plaintiff} meet his religious obligations." Trans World Airlines v. Hardison, 432 U.S. 63, 83, 97 S. Ct. 2264. It is well established that the neutral operation of a bona fide seniority system, even if it has "some discriminatory consequences," does not violate the proscription against religious discrimination in employment. Id. 432 U.S. at 82; 97 S. Ct. 2264, see also 42 U.S.C. §2000e-2(h), § 703(h) ("[I]t shall not be an unlawful employment practice ... to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant

to a bona fide seniority or merit system."). Id. There has been no showing that the Defendant's seniority system is not bona fide, or that it was created to discriminate against religious minorities.

If Plaintiff were permitted to shift-swap during his probationary period, or exempt him from possible deployment during his Sabbath and certain Jewish Holidays it would violate the terms of seniority based system in the CBA/A&C. Furthermore, courts have routinely held that the adverse effects that accommodations for religious practices might have on other employees can constitute undue hardship on the employer. Brener v. Diagnostic Center Hospital, 671 F.2d 141, 147 (5th Cir.1982) ("Brener's characterization of complaints by others as mere grumbling underestimates the actual imposition on other employees in depriving them of their shift preference at least partly because they do not adhere to the same religion as Brener."); Cook v. Chrysler Corp., 779 F.Supp. 1016, 1023 (E.D.Mo.1991) ("Granting Cook a preference in the seniority structure ... would create very hard feelings among Cook's fellow employees..... The Court can only imagine the degree of animosity and hostility such a move would create."), aff'd, 981 F.2d 336 (8th Cir.1992). Indeed, some courts have equated a more than de minimis impact on co-workers with a more than de minimis cost to the employer. Bhatia v. Chevron U.S.A., Inc., 734 F.2d 1382, 1384 (9th Cir.1984) ("An employer may prove that an employee's proposal would involve undue hardship by showing that either its impact on co-workers or its cost would be more than de minimis."). If plaintiff was granted work day exemptions for the Sabbath and certain Jewish Holidays, and his name came up on the mandatory recall list for emergency duty, his place would have to be taken by a more experienced Trooper. This would mean that a more experienced Trooper would be required to work in Plaintiff's place while Plaintiff was

exempted from this contractual responsibility. This event could be a possible source of co-worker animosity, as well as a violation of the CBA/A&C seniority system. "[j]uggling assignments to make each compatible with the varying religious beliefs of a heterogeneous police force would be daunting to managers and difficult for other officers who would be called on to fill in for the objectors." Enders v. Indiana State Police, 349 F.3d 922, 925 (7th Cir. 2003).

Moreover, even when the employee's proposed accommodation is relatively innocuous, such as a shift change to permit the employee to observe a Sabbath, Title VII is not especially hospitable. Where, as here, the proposed accommodation could conceivably threaten to compromise public safety, the employer's burden of establishing an undue burden is light indeed. "[s]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business." Draper v.U.S. Pipe & Foundry Co., 527 F.2d 515, 521 (6th Cir. 1975).

The Court finds that under the circumstances of this case, the Defendant has satisfied its burden by establishing that any reasonable accommodation permitting plaintiff's religious observances would create undue hardship on the operations of the New York State Police.

Accordingly, Plaintiff's claims under New York Executive Law § 296 are **DISMISSED;** Plaintiff's cross motion for summary judgment is **DENIED;** Defendant's motion for summary judgment is **GRANTED, and the complaint is DISMISSED.**

**IT IS SO ORDERED.**

Dated: June 28, 2005
Syracuse, New York

_/s/ Howard G. Munson_
Howard G. Munson
Senior U.S. District Judge

11